Parks *v.* Satterthwaite, Administrator.

Filed Oct. 14, 1892.

———————◆———————

No. 15,414.

## Parks v. Satterthwaite, Administrator.

**Trust and Trustee.**—*Special Finding.*—*Fraud.*—*Recovery.*—In an action against a trustee's administrator for a conversion of money by the decedent, where there is a special finding of the court, but such special finding does not show that there was any actual fraud on the part of the trustee, the case must be treated as one into which no element of fraud enters. Where fraud is essential to a recovery, it must be found as an ultimate or inferential fact.

**Same.**—*Statute of Limitations.*—*Exceptions to.*—The rule that the statute of limitations is a bar to suits in equity as well as actions at law has its exceptions in direct trusts, and technical and continuing trusts, which are creatures of, and fall within the exclusive jurisdiction of chancery.

**Same.**—*Statute of Limitations.*—*Declarations.*—*Estoppel.*—Mere declarations of the trustee that he had so arranged matters that appellant would get his money will not, in the absence of fraud, operate by way of estoppel to preclude the appellee from setting up the statute of limitations.

**Special Findings** —*Must State Facts not Evidence.*—In a special finding, mere statements of matter of evidence are out of place and can not be considered in this court. It is the duty of the trial court to determine what the evidence proves and state its judgment or conclusions as to the fact.

---

Parks *v.* Satterthwaite, Administrator.

---

STATUTE OF LIMITATIONS.—*Continuing Trust.—Demand.— When Necessary.*— The statute of limitations does not run until a cause of action accrues, and where there is a continuing trust, or where the contract is a continuing one and of such a character as to make a demand necessary to a complete cause of action, the statute does not begin to run until a demand has been made.

From the Huntington Circuit Court.

*O. W. Whitelock* and *S. E. Cook,* for appellant.

*H. B. Sayler, S. M. Sayler* and *J. M. Sayler,* for appellee.

ELLIOTT, J.—In the year 1865 the county of Huntington offered a bounty of five hundred dollars to each person who would enlist in the military service of the United States. This offer was accepted by the appellant, and he entered the service.   At the time of his enlistment he was under the age of twenty-one years.   Shortly after his enlistment his father, Joseph Parks, since deceased, collected the bounty without his knowledge or consent.   The deceased admitted to divers persons the collection of the money, and stated that he was keeping it for his son, and at one time (the date does not appear) declared, in response to a request from the appellant, that he had arranged it so that the appellant would get the money. This suit was not brought until more than fifteen years after the receipt of the money by the father, and was not brought until after the father's death.   The facts we have outlined are embodied in a special finding.

As there is no finding that the appellee's intestate was guilty of actual fraud, we must treat the case as one into which no element of that kind enters, for it is well settled that where fraud is essential to a recovery it must be found as an ultimate or inferential fact.   See authorities cited in Elliott's Appellate Procedure, section 787, note 2.   The case before us does not come within the rule that suits against a trustee are not necessarily barred where the person charged as trustee was guilty of fraud.   We fully recognize the rule that even in cases of constructive or implied trusts the statute will not bar a suit where there is fraud, but we can

not assume that there was fraud on the part of Joseph Parks. *Piatt* v. *Vattier*, 1 McLean, 146 ; *Piatt* v. *Vattier*, 9 Pet. 405 ; *Juzan* v. *Toulmin*, 9 Ala. 662.

The appellee's intestate undoubtedly received and held the money under such circumstances as entitled the appellant to treat him as a trustee. If the suit had been brought in due time, there would have been no question as to the appellant's right to recover as the beneficiary of an implied or constructive trust. The question, however, in the actual case is not as to the abstract right of recovery, but as to the effect of the statute of limitations upon the right to maintain a suit. If the case is to be regarded as the ordinary one of a trust imposed by law, there can be no escape from the conclusion that the statute operates as a bar. The case falls fully within the doctrine thus stated in *Raymond* v. *Simonson*, 4 Blackf. 77 : " The general rule, however, that the statute of limitations is a bar to suits in equity, as well as actions at law, has its limits. It is opposed by another general rule, that in cases of frauds and trusts, the statute of limitations does not run. The trusts coming within this rule are direct trusts, technical and continuing trusts, which are not cognizable at law, but which are mere creatures of a court of equity, and fall within the proper and exclusive jurisdiction of chancery. There are numerous eventual and possible trusts, that are raised by law and otherwise, and that fall within the control of the statute. Every deposit is a trust; every person who holds money to be paid to another , or to be applied to a particular and specific purpose, is a trustee, and may be sued either at law or in equity." If the trust imposed upon Joseph Parks must be regarded as an ordinary trust imposed by law, then it is within the statute, inasmuch as the trust is not one of exclusive equity cognizance, and such a trust is not a continuing one. If the trust was completed when the money was received, then a cause of action enforceable at law arose, for the appellant might have sued upon an implied contract or for money had and received.

It is well settled that in such case the statute prevails. *Smith* v. *Calloway*, 7 Blackf. 86 (88); *Newsom* v. *Board, etc.*, 103 Ind. 526, and authorities cited; *Stone* v. *Brown*, 116 Ind. 78 (80); *Godden* v. *Kimmell*, 99 U. S. 201; *Johnston* v. *Smith*, 27 Mo. 591. Where, however, there is a continuing trust or obligation the rule does not, as we shall presently show, operate in full force or vigor.

We agree with counsel that there may be cases where the person charged as a trustee may be estopped from availing himself of the statute, but we can not hold that the appellee is estopped from setting up that defence. There is no finding that there was any fraudulent concealment of the receipt of the money, nor any fraudulent attempt to prevent the appellant from ascertaining and enforcing his rights. We can not agree with appellant's counsel that the assurance of the deceased that he had so arranged the matter that the appellant would get his money operates, by way of estoppel, to preclude the appellee from setting up the defence of the statute, since there is no finding that there was a fraudulent act or fraudulent intent.

The statement in the special finding that the appellee's intestate declared to third persons that he was keeping the money for his son is the statement of a matter of evidence, and is not the statement of a fact. As we have already impliedly said, the statements of mere matters of evidence are out of place in a special finding, for it is the duty of the trial court to determine what the evidence proves and state its judgment or conclusion as the fact. In this instance, if the court had concluded that the evidence proved that Joseph Parks was keeping the money for the appellant, it was its duty to have so stated its conclusion, and not, as it did, merely report the evidence in the special finding. Evidence and facts are essentially different things. We can not, under the well settled rule, do otherwise than eliminate the statements of the evidence from the facts stated by the court.

The difficult question in the case is as to whether the facts

stated, excluding mere evidence, show that the deceased agreed with his son to keep the money for him. If he did so agree, then we think it quite clear that it must be adjudged that the right of action is not shown to be barred. Where one receives the money of another to keep for him—takes it, in other words, as a continuing trust—the statute does not run until there is a disavowal of the trust or a refusal to perform upon proper demand. If, for illustration, a son is about to enter the army, and the father receives or collects money under an agreement to keep it for him, the statute does not begin to run until there has been a breach or a disavowal of the trust. This is the doctrine of many closely analogous cases. *Sawyer* v. *Tappan*, 14 N. H. 352; *Rusling* v. *Rusling*, 42 N. J. Eq. 594; *Zuck* v. *Culp*, 59 Cal 142; *Cross* v. *Eureka, etc., Co.*, 73 Cal. 302.

The doctrine is substantially the same at law as in equity. Morse Banking, section 322; *Payne* v. *Gardiner*, 24 N. Y. 146; *Smiley* v. *Fry*, 100 N. Y. 262; *Finkbone's Appeal*, 86 Pa. St. 368. The statute does not begin to run until the cause of action accrues, and where there is a continuing trust, or where the contract is a continuing one, and of such a character as to make a demand necessary to a complete cause of action, the statute does not begin to run until demand has been made. *Pressley* v. *Davis*, 7 Richardson Eq. 105 (62 Am. Dec. 396). It is true that there are cases where the demand must be made within the period fixed by statute. *Newsom* v. *Board, etc., supra,* and cases cited. But it is also true that there are cases where a very different rule applies. Such a case, for instance, is that of a continuing trust, or of a contract to keep for another money of which he makes a deposit. *Girard Bank* v. *Bank*, 39 Pa. St. 92; *Wilson* v. *Brookshire*, 126 Ind. 497. No general rule can be laid down that will fit all cases, since there are cases where justice requires that a demand should be made within the statutory period, while in others the nature of the contract and the situation of the parties requires that it be adjudged that the trust or obliga-

tion is a continuing one, which is not violated or broken until there is a refusal to honor a demand, and that until then the statute does not begin to run. *Daugherty* v. *Wheeler*, 125 Ind. 421 (426). But while we believe the law would be with the appellant if the assumption of counsel that there was a direct and continuing trust could be made good, we are compelled to hold that, upon the facts stated in the special finding, the assumption is unsupported, and that there is no express or direct continuing trust or obligation shown. The utmost that can be said *is* that there was a trust cast upon the appellee's intestate, and that by subsequent acts and declarations he acknowledged the trust. We have endeavored in vain to find facts which will justify us in holding that there was such a continuing direct trust or obligation as postponed the running of the statute until after a demand and a refusal or disavowal.

If there had been a motion for a *venire de novo* properly followed up, we should have quite a different case, but we have only the exceptions to the conclusions of law.

Judgment affirmed.

**Filed** October 14, 1892.